Joseph ELKANICH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18702.

United States Court of Appeals
Ninth Circuit.

Jan. 13, 1964.

Rehearing Denied Feb. 18, 1964.
Certiorari Denied April 27, 1964.
See 84 S.Ct. 1182.

John J. Fahey and Herbert Chamberlin, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and James F. Hewitt, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and MURRAY, District Judge.

MURRAY, District Judge.

Appellant appeals his conviction, after a jury trial, on three counts of fraudulently and knowingly selling and concealing and facilitating the sale and concealment of heroin, in violation of 21 U.S.C. § 174. Jurisdiction of this appeal is conferred on this court by 28 U.S.C. §§ 1291 and 1294.

Appellant was arrested by federal narcotic agents without a warrant on July 20, 1962, in an apartment on Hyde Street, San Francisco. Found and seized in the search of the apartment which followed the arrest were $1,550 of official advance funds previously used in the purchase of heroin on July 13, 18 and 19, 1962, from one Albert Rios, and a plastic bag enclosed in a large manila envelope. This money, plastic bag and envelope were received in evidence at the trial over

appellant's timely objection, after his pre-trial motion to suppress made pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure had been denied.

The sole question presented by this appeal is whether the arresting officers had "probable cause" within the meaning of the Fourth Amendment to the Constitution,[1] and "reasonable grounds" within the meaning of § 104(a) of the Narcotic Control Act of 1956, 70 Stat. 570, 26 U.S.C. (Supp. V), § 7607[2] to arrest appellant without a warrant, for if the arrest were lawful, the search and seizure made in connection with the arrest were likewise lawful, and the evidence which was the product of the arrest and the search and seizure was properly admitted. Draper v. United States, 358 U.S. 307, 310, 314, 79 S.Ct. 329, 3 L.Ed.2d 327. "Probable cause" as used in the Fourth Amendment, and "reasonable grounds" as used in § 104(a) of the Narcotic Control Act, are substantial equivalents of the same meaning. Draper v. United States, supra; United States v. Walker, 7 Cir., 246 F.2d 519, 526.

To resolve this problem a somewhat detailed statement of the circumstances surrounding the three narcotic sales charged in the indictment is necessary. All three sales were made by one Albert Rios, a narcotic addict, to one Leonard Lang, an undercover Federal Narcotic Agent. In each instance the purchase was made with "official advance funds", that is, money supplied by the government in currency, the serial numbers of which had been recorded on a money list.

The first sale was made July 13, 1962. At 9:30 that evening, pursuant to pre-vious arrangements between them, Lang met Rios at a telephone booth on the highway near a shopping center at Pacifica, a suburb of San Francisco. They drove in Rios' car to San Francisco where Rios parked in the 600 block on Larkin Street, across the street from the Marlow Hotel or Apartments. At that time and place, in Rios' car, Lang gave Rios $700 in official advance funds for the purchase of one ounce of heroin. Rios left the car, crossed the street and entered the Marlow Hotel. He remained in the hotel for about 30 minutes, and then returned and reentered the automobile and handed Lang a small brown paper sack containing a plastic envelope with heroin inside. They returned to Pacifica where Lang picked up his car and drove back to San Francisco with the heroin.

The second sale was made July 18, 1962. On that date, at about 3 o'clock P.M., Lang met Rios at a bowling alley in the 2900 block on Mission Street in San Francisco, and from there they drove to a bar at 11th and Mission Streets, where, at approximately 4:15 P.M., Lang delivered to Rios $600 in official advance funds, and Rios departed. Lang remained in the bar for about an hour and a half until he received a telephone call from Rios, and then he went to a parking lot of the Safeway Store at Market and Duboce Streets, where he met Rios again. They entered the Safeway Store, and at a phone booth in the store Rios delivered to Lang a paper sack containing a plastic envelope with heroin inside.

The third sale was on July 19, 1962. Lang again met Rios at the bowling alley and they arranged a subsequent meeting.

1. The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

2. "The Commissioner * * * and agents, of the Bureau of Narcotics * * * may—
   "(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

At 4:00 P.M. that same day, Rios picked up Lang in his car and drove to the vicinity of 14th and Belcher Streets in San Francisco, where Rios parked his car. Lang then gave Rios $1,200 in official advance funds, and Rios left the car and disappeared. He returned to the car in about 30 minutes and delivered to Lang a brown paper sack containing 4 plastic envelopes with heroin inside. Lang then picked up his own car and returned to his office, and Rios was arrested by other Federal Narcotic Agents on his way home to Pacifica, at about 6:00 P.M. on July 19, 1962, at which time, $200 of the official advance funds was found in his car.

At the time of his arrest on the evening of July 19th, Rios had in his possession two keys and an address book. When questioned as to his source of supply of heroin at that time, Rios stated his source was a Chinese seaman named "Charlie", but that he had no address or telephone number for this person. When questioned by agent Lang again on the afternoon of July 20, the day following his arrest, Rios informed Lang that the keys found on his person were to room 30 in the Marlow Hotel, where he had met "Charlie" the Chinese seaman on the evening of July 13th and purchased the heroin he sold to Lang on that date.

On checking at the hotel after receiving this information, Lang was informed by the landlady that she had been managing the hotel for three months and that no Chinese had been in the hotel during that time to her knowledge. Upon examining the rent receipts, she informed Lang that room No. 30 had been rented on July 13, 1962, to a "Slovakian-looking fellow," whom she described in detail, and she furnished a rent receipt indicating that the name of the occupant of room 30 on the evening of July 13th was Joseph Elkanich. She further advised Lang the room had not been slept in that night and she had found two empty beer cans when she cleaned the room.

Armed with this information, Lang returned to his office and checked Bureau of Narcotics files and discovered four or five memorandum reports dating back to 1951, relating to a Joseph Elkanich, a seaman, who met the physical description of appellant furnished by the landlady of the Marlow Hotel. Several of the reports contained information from reliable informants, as well as reports of a Federal Narcotics Agent who had contacted Elkanich in 1953 or 1954 in an undercover capacity, reflecting that Elkanich was suspected of being a seaman smuggler of heroin from the Orient.

The file also indicated that Elkanich had been incarcerated at McNeil Island in 1960, so Agent Lang went to the San Francisco Police Department seeking a photograph. He encountered some delay in obtaining the photographs at the Police Department, and it was not until approximately 5 o'clock P.M. that he received the pictures and returned to the Marlow Hotel, where the landlady positively identified the photograph of appellant as the man who rented Room 30 on the evening of July 13th.

Since there was no listing in the telephone directory for a Joseph Elkanich, Agent Lang called the Telephone Company and ascertained that appellant had an unlisted telephone number, and that the address for the unlisted number was 345 Hyde Street, Apartment No. 1. Lang then determined upon checking that appellant's unlisted telephone number was contained in the address book taken from Albert Rios at the time of his arrest.

By the time all this information had been gathered, it was late afternoon or early evening, and Agent Lang attempted to contact a United States Commissioner in order to obtain a warrant for Elkanich, but was unable to locate the Commissioner. Realizing that Rios had been attempting to conceal the true identity of his source of supply and that Rios had access to a telephone at the County Jail with which to warn Elkanich, and feeling that he had probable cause and

reasonable grounds to arrest Elkanich, Lang, with two fellow narcotic agents proceeded to Elkanich's apartment and made the arrest, and incidental thereto conducted the search and seizure.

Speaking of probable cause sufficient to justify an arrest without a warrant, the Supreme Court, in Draper v. United States, supra, stated at page 313 of 358 U.S.Reports, at page 333 of 79 S.Ct., 3 L.Ed.2d 327:

> " 'In dealing with probable cause, \* \* \* as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, 338 U.S. at 175 [69 S.Ct. at page 1310, 93 L.Ed. 1879]. Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543]."

We believe here that the facts and circumstances within Agent Lang's knowledge and of which he had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution to conclude that an offense had been committed and that appellant was involved in it. He knew that on three occasions he had purchased heroin from Rios. Considering the manner in which the sales were conducted, i. e. first, the payment of the money to Rios, then Rios disappearing to return later and make delivery of the narcotics, it was a reasonable assumption that he was contacting someone to purchase the narcotics which he in turn sold to Agent Lang. This conclusion was fortified when, on his arrest almost immediately after the last sale, Rios had in his possession only $200 of the $1200 paid him by Agent Lang just shortly prior thereto. Furthermore, Rios advised Lang during the course of their dealings and prior to his arrest that he had a source of supply who was a seaman named Charlie, and as pointed out, the method in which the sales were transacted confirmed the fact that Rios was obtaining the narcotics from someone each time he made a sale. All of these circumstances furnished Agent Lang abundant probable cause and reasonable ground for believing that narcotic offenses had been committed by someone in addition to Rios.

The remaining question for consideration, then, is whether the facts and circumstances within the officer's knowledge pointed with sufficient probability to appellant as being Rios' source of supply to justify his arrest without a warrant. As pointed out, Agent Lang knew, or reasonably believed, that a transfer of narcotics to Rios from his supplier occurred the evening of July 13th in room 30 of the Marlow Hotel. The keys to this room were in Rios' possession when he was arrested, and he informed Agent Lang he had purchased the heroin from a Chinese named Charlie in that room on that occasion. However, investigation at the hotel disclosed that no Chinese had been in the hotel at or about the time in question. When that investigation ultimately revealed that appellant was the person who rented room 30 the evening of July 13th, and it was then discovered that appellant had a record with the Bureau of Narcotics dating back a number of years as a suspected smuggler of heroin, the same narcotics involved in these sales, the officer had probable cause and reasonable grounds for believing appellant was the one involved with Rios in the narcotic transactions under investigation. Possession by Rios in his address book of appellant's unlisted telephone number is also significant, considered in the light of the fact that from the manner in which each of the sales from Rios to Lang was transacted, it was a reasonable assumption that Rios was a middleman who had to call his supplier to arrange for a supply

of heroin after Lang had placed his order and paid the money.

Bearing in mind that while "an arrest with or without a warrant must stand upon firmer ground than mere suspicion", but "the arresting officer need not have in hand evidence which would suffice to convict", Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 412, 9 L.Ed.2d 441, we hold the officers, under all the circumstances of this case taken together, had probable cause and reasonable grounds for arresting appellant without a warrant, and that the evidence obtained as a result of said arrest and related search was properly admitted, and the judgment is affirmed.