# Richmond

WILLARD C. JORDAN v. COMMONWEALTH OF VIRGINIA.

November 28, 1966.

Record No. 6338.

Present, All the Justices.

*Murray A. Stoller* for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

Willard C. Jordan, defendant, was indicted for statutory burglary and grand larceny. The jury found defendant guilty of grand larceny and fixed his punishment at confinement in the State penitentiary for a term of seven years. The case is before us upon a writ of error awarded to the judgment entered on the jury verdict.

Early on the morning of March 13, 1965, Roanoke City Police Officers E. B. Hamblett and W. L. Bowling were patrolling the northwest section of the city. As they approached Starland Bowling

Lanes on Shenandoah avenue the lights of their automobile were turned off as was customary, and they drove into Starland's parking lot for a "routine check" of the property. Starland had been closed and was "under Government supervision".[1] There were signs posted on the building which read "[N]o trespassing Government property". Adjacent to the bowling alley and surrounded by an eight-foot cyclone fence is the Macke V.C.S. Vending Corporation building which was later discovered to have been burglarized.

As Hamblett drove the vehicle under a light in Starland's driveway, Bowling spotted defendant running on Starland's property adjacent to the building. Because of defendant's suspicious conduct Hamblett chased defendant across a field toward an abandoned "go-cart track". He called for defendant to halt and upon his failure to comply fired a warning shot in the air. Defendant ran into a fence surrounding the track which "knocked him back and he jumped back and broke the fence." He surrendered inside the fence and was brought back to the police car. Although the weather was "mild", defendant was attired in "coveralls" and was wearing cotton gloves.

Defendant told the officers that he was running because they "excited him"; that he left the highway and went on the Starland property for "physical purposes"; that he was cold and was "trying to find a place to sleep"; that his home was in Florida; that he had hitchhiked from West Virginia and had just arrived in Roanoke; and that he owned a 1955 Buick with Florida license tags which was parked at a motel where he was staying "up the road about a couple of miles." Defendant was placed under arrest at the scene by Officer Bowling. Hamblett was asked on direct examination why the defendant was arrested. He testified "Well he was on Government property." After defendant's arrest, a search of his person revealed a woolen mask of a type generally used by skiers which completely covers the head, except for eye, nose and mouth openings, and also a "Wittenburg Sandwich Machine wrench" which is specially designed for the adjustment and repair of vending machines. This tool was later positively identified as having been taken from a locker drawer in the Macke building.

Before leaving the scene, the officers made a casual outside inspection of the buildings in the vicinity, but saw no evidence of an entry.

(1) The record does not specifically show why Starland was "under Government supervision." It is stated in the Commonwealth's brief that the business was in "receivership".

The officers, accompanied by defendant, attempted to locate defendant's motel and Buick automobile. The search was futile and defendant was taken to police headquarters where he was docketed at 4:41 a.m. for "vagrancy" and held for "investigation." Hamblett and Bowling immediately returned to the scene to make a thorough check of the premises. They arrived there about 5 a.m. and proceeded to trace "the same route we had taken when we arrested Mr. Jordan."

The officers found "evidence of where someone had climbed the fence" which separated the Macke property from the Starland property. A small part of the fence at its base had been pushed up. An empty money bag was discovered close to and inside the fence. In the grass on the Starland side of the fence the officers found a money bag which contained between forty and fifty dollars in silver. A similar amount in coin was found scattered along the fence toward the Starland driveway.

An official of Macke was called to the scene and a search of the interior of the building disclosed that the building had been burglarized. It was ascertained that entry had been accomplished through a small rear window that was very difficult to see from the outside. On the inside, holes had been punched through two cinder block walls to gain entry to the room where the safes were located. A large double door "wall safe" and a smaller safe were found to be badly damaged and the doors open. A Macke official testified that approximately $11,000 had been taken of which 85 percent was in coin, and that a coin sorter valued at $1,000 was also missing.

Lieutenant Thomas of the Roanoke detective bureau, who was in charge of the investigation, arrived at the scene at 6:30 a.m. He testified that he found near the fence three metal coin cans, two wheeled dollies which Macke used on the inside of its building to move freight, and also truck tracks on Starland's side of the fence. Immediately after the investigation on the morning of March 13, Lieutenant Thomas charged defendant with the offense of statutory burglary.

The clothing defendant was wearing at the time of his arrest and specimens of safe insulation and paint chips taken from the safes, mortar and cinder block chips taken from the floor where the partitions were knocked out, were each individually packaged, sealed and forwarded by the Roanoke Police Department to the Federal Bureau of Investigation laboratory for analysis and comparison.

Richard W. Flach, an FBI laboratory technician and F. L. Edwards, an FBI agent assigned to the spectrographic unit, after qualifying as experts, testified in detail as to the results of their respective analyses. Flach stated that the safe insulation, cinder block chips and mortar found on defendant's clothing were of the same consistency as the samples forwarded. Edwards testified that the paint chips removed from one of Macke's safes matched paint fragments found on defendant's clothing.

The defendant neither testified nor offered any evidence in his behalf.

The defendant has made 14 assignments of error. Essentially, he alleges (1) that his arrest was illegal and as a consequence evidence obtained by the search of his person was inadmissible; (2) that the interrogation of him by an officer was unlawful; (3) that a witness was improperly qualified as an expert; (4) that the court erred in refusing to strike the Commonwealth's evidence; (5) that the court erred in giving and in refusing certain instructions; (6) that the court erred in failing to set aside the verdict which convicted him of grand larceny because of insufficient evidence and because the jury was not instructed on the elements of grand and petit larceny; (7) that his "rights were infringed" by the imposition of excessive bail; and (8) that the court erred in refusing to set aside the verdict as being contrary to the law and evidence.

First, we shall consider defendant's contention that his arrest was unlawful. He says this is so because (1) he was not arrested on a warrant; (2) he did not commit a misdemeanor in the presence of the arresting officers, and (3) the officers did not have reasonable grounds to believe that he had committed a felony. On the other hand, the Commonwealth takes the position that defendant's arrest was lawful because a misdemeanor was committed in the presence of the officers and because the officers had reasonable grounds to believe that defendant had committed a felony.

Code, § 19.1-20 provides in part:

"* * * Every conservator of the peace shall arrest without a warrant for felonies committed in his presence, or upon reasonable suspicion of felony, and for breaches of the peace and *all misdemeanors of whatever character committed in his presence.*" (Emphasis added.) See also *Byrd* v. *Commonwealth,* 158 Va. 897, 902, 164 S.E. 400, 402; 2 M.J., Arrest, §§ 8 and 9; 5 Am. Jur., 2d, Arrest, §§ 25 and 28; 6 C.J.S., Arrest, § 5.

Code, § 18.1-173 reads:

"If any person shall without authority of law go upon or remain upon the lands, buildings or premises of another, or any part, portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof, *or after having been forbidden to do so by a sign or signs posted on such lands, buildings, premises or part, portion or area thereof at a place or places where it or they may be reasonably seen, he shall be deemed guilty of a misdemeanor,* and upon conviction thereof shall be punished by a fine of not more than one thousand dollars or by confinement in jail not exceeding twelve months, or by both such fine and imprisonment." (Emphasis added.)

It is manifest from a reading of the two foregoing sections of the Code that a police officer may arrest without a warrant when a misdemeanor is committed in his presence, and that when a person without authority of law goes upon the lands, buildings or premises of another after having been forbidden to do so by a sign or signs posted on the "premises or part, portion or area thereof at a place or places it or they may be reasonably seen, he shall be guilty of a misdemeanor."

The record shows that there were signs posted by the U.S. Government in conspicuous places on the Starland building which read "[N]o trespassing Government property." The defendant was first seen by the officers running on Starland's property adjacent to its building. The defendant had no authority of law to be on the premises and his presence there under the circumstances constituted a misdemeanor.

It is true that Officer Bowling testified that he placed defendant under arrest for "vagrancy", and that defendant was docketed at police headquarters for that offense and also held for "investigation". But the mere fact that defendant was not specifically charged with trespassing in violation of Code, § 18.1-173, *supra,* is not controlling. The proven fact is that defendant committed a misdemeanor (unlawful trespass) in the presence of the officers. Hence, they had the authority to make an arrest.

Having concluded that defendant's arrest was lawful, it follows that the officers had the right to search his person and the evidence obtained as a result of the search was admissible. See *United States v. Rabinowitz,* 339 U.S. 56, 59, 70 S.Ct. 430, 432, 94 L.ed. 653, 657; *Draper v. United States,* 358 U.S. 307, 310, 311, 79 S.Ct. 329, 331,

332, 3 L.ed. 2d 327, 330; *Elkanich* v. *United States,* 327 F. 2d 417, 418, cert. den., 377 U.S. 917, 84 S. Ct. 1182, 12 L.ed. 2d 186; and *Robinson* v. *United States,* 283 F. 2d 508, 509. See also 16 M.J., Searches and Seizures, § 9, at 371; 47 Am.Jur., Searches and Seizures, § 19, at 515; and 79 C.J.S., Searches and Seizures, § 26, at 795.

Defendant next contends that he was unlawfully questioned because he was not advised of his right to counsel when he was interrogated at headquarters by Captain Cochran about 9:30 a.m. on the morning of the arrest.

Captain Cochran testified that he identified himself to defendant as a police officer and told him "[t]hat I wanted him to talk with me regarding the Macke Vending Company breakin; that he didn't have to talk with me unless he wanted and that anything he told me could be used against him in the Court". Jordan then replied "that he was aware of this." However, Captain Cochran stated that he "couldn't remember for sure" whether he advised defendant of his right to counsel.

Captain Cockran further testified that Jordan did not do a "whole lot of talking" and did not make a "whole lot of statements". He said that defendant "started off by telling me that he was not going to admit any participation in any burglary and that as a matter of purpose that if he had participated he would not implicate anyone else * * *." Captain Cochran also stated that defendant told him that the reason he had the "Wittenburg Sandwich Machine wrench" on his person was because he had "picked it up near where he was arrested just prior to being arrested by the Officers." There was no admission or confession made by defendant during the short interrogation.

The defendant relies upon *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.ed. 2d 977 to support his position, but in our view that case is not authority for the proposition advanced.

We are not unmindful that in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.ed. 2d 694 the court said that before interrogating a person in custody he must be warned, among other things, that he has a right to consult with an attorney, and that if he is indigent a lawyer will be appointed to represent him. However, that court pointed out later in *Johnson* v. *New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.ed. 2d 882 that the decision in *Miranda* will not be applied retroactively and that it was to be applied only to those cases in which trial began after June 13, 1966, the date of the *Miranda*

decision. The case at bar was tried before the *Miranda* decision and is therefore not controlled by it. We hold that the alleged failure of the interrogating officer to advise defendant of his right to counsel did not violate his constitutional rights, and that the court did not err in refusing to exclude Cochran's testimony.

The defendant says that the trial court erred in ruling that F. L. Edwards, a special agent with the FBI, who testified that paint chips from a Macke safe were identical to those found on defendant's clothing, was qualified as an expert witness.

Edwards testified that he had received a Bachelor of Science degree from Dickinson College, a Bachelor of Law degree from Cleveland Marshall Law School, and had "done about a year and a half * * * graduate work in physics and chemistry" at the University of Pittsburgh. He further stated that he had been assigned to the spectrographic unit (physics and chemistry section) of the FBI laboratory for four years, and that he had previously testified as an expert witness in both Federal and State courts.

Upon this showing the trial court correctly ruled that Edwards was qualified to testify as an expert. As this court has many times said, "the question of the qualification of a witness to speak as an expert lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness was not qualified." *Ames & Webb, Inc.* v. *Commercial Laundry*, 204 Va. 616, 621, 133 S.E. 2d 547, 550. See also *Swersky* v. *Higgins*, 194 Va. 983, 985, 76 S.E. 2d 200, 202 and cases there cited; 20 Am. Jur., Evidence, § 786, pp. 659, 660; 2 Wharton's *Criminal Evidence* (12th Ed.) § 506, p. 330.

Next, the court did not err in refusing to strike the Commonwealth's evidence as contended by defendant. Suffice it to say that there was ample evidence adduced to support a conviction under the indictment.

We proceed now to a consideration of the instructions in question.

Instruction No. I told the jury that if they believed beyond a reasonable doubt that defendant broke and entered the Macke building with intent to commit larceny, then they should find defendant guilty as charged and fix his punishment within the range set forth therein. The form of the instruction is not challenged. Defendant says that it was error to have given the instruction because there was no evidence to support it. He argues that defendant "could not have broken and entered the building, because such only could have been done

by means of massive tools or instruments, and he could not have carried them himself nor were they found." We find that the evidence was sufficient to show that defendant broke and entered the building with intent to commit larceny, and that the court did not err in giving the instruction.

Instruction No. II was given over defendant's objection. It reads:

"The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that Macke V.C.S. Vending Company, was broken and entered and among the goods in question a Wittenburg Sandwich Machine Tool was taken from the said company and that the breaking and entering and larceny were all a part of the same transaction, that is, committed at the same time and by the same person, and that the property or a part of the property taken has been found in the exclusive possession of the defendant and the exclusive possession of the stolen goods shortly thereafter has been unexplained or falsely denied, this is sufficient to raise an inference that the defendant is guilty of the breaking and entering, and that if such inference, taking into consideration the whole evidence, warrants a belief beyond a reasonable doubt that the defendant committed the offense charged, then it is the duty of the jury to find him guilty."

The defendant claims that the instruction is erroneous because it is a finding instruction and does not contain both the prosecution and the defense theories of the case and because it singles out a particular portion of the evidence.

As will be observed, this instruction deals with a question of evidence, i.e., an inference. It told the jury that if they believed from the evidence beyond a reasonable doubt that the matters recited in the premise had been established as facts, then those facts would be sufficient to raise an inference that the defendant was guilty of breaking and entering, i.e., of statutory burglary; and if such inference, considered with the whole evidence, warranted a belief beyond a reasonable doubt that the defendant committed the offense, they should find him guilty.

The jury, however, found him not guilty of statutory burglary, but guilty only of grand larceny, and hence this instruction, even if an improper one, which we do not conclude, worked no prejudice to the defendant, and its giving, if error, was harmless. See 24B C.J.S., Criminal Law, § 1922(15), p. 198, and cases there cited.

The defendant also claims that the court erred in refusing

Instruction E (erroneously designated as F in the printed record). It would have told the jury that they could not convict defendant of the offenses charged on the basis of circumstantial evidence alone "unless the proved circumstances not only are consistent with the hypothesis that the defendant is guilty of the offense, but are irreconcilable with any other rational conclusion."

The trial court refused the instruction because the principle of law was covered in other instructions granted. We agree with the trial court's ruling. Instruction D told the jury that before they could find defendant guilty "entirely or chiefly" on circumstantial evidence, "each fact that is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt." Further, Instruction C-1 told the jury that "it is not sufficient that facts and circumstances proved be consistent with the guilt of the defendant, but they must be inconsistent with every reasonable hypothesis consistent with the innocence of the defendant."

Defendant next contends that the court erred in failing to set aside the verdict which convicted the defendant of grand larceny because there had been no specific instruction submitted to the jury on the elements of larceny and the punishment which may be inflicted therefor. We find this contention to be without substance.

The defendant was tried on an indictment containing a single count which charged statutory burglary and also grand larceny. It is well settled that on such an indictment there may be a conviction of either offense. *Stapleton* v. *Commonwealth*, 140 Va. 475, 485, 124 S.E. 237, 240.

The record shows that the jury were charged when sworn that they could find defendant guilty of statutory burglary, grand larceny or petit larceny. No instruction on grand larceny was offered or refused. No objection was made to the failure of the court to give such an instruction. Counsel for defendant stipulated in the record that the trial court in submitting the case gave the jury "three possible forms of verdict", viz: guilty of statutory burglary, guilty of grand larceny, and not guilty. The record does not show that defendant made any objection at the time to the action of the court. There was ample evidence adduced to support the verdict convicting defendant of grand larceny and the punishment fixed by the jury was well within the limits prescribed by law. Code, § 18.1-100.

The defendant also complains that after his conviction the

amount of bail fixed by the court was so excessive that he could not gain his liberty and assist in his appeal. Thus, he say that his "rights were infringed".

The record shows that the trial court set defendant's bail at $10,000, because "he was already on bond in Florida" and because he was of opinion that "the likelihood of this man skipping bond would be high." The amount of bail rests within the sound discretion of the trial court, and we cannot say here that either such discretion was abused or that his constitutional rights were violated.

Finally, defendant contends that the court erred in refusing to set aside the verdict as being contrary to the law and evidence. From what has been said, it is apparent that no such error was committed.

We find no reversible error in the judgment appealed from and it is

*Affirmed.*