**Lucian D. GREEN, Jr., Plaintiff,**

v.

**CITY OF WELCH, a West Virginia Municipality, and L.T. Vaseleros, Defendants.**

**Civ. A. No. 1:92–0608.**

United States District Court, S.D. West Virginia, Bluefield Division.

June 3, 1993.

---

David M. Katz, Bluefield, WV, for plaintiff.

Steven P. McGowan and Andrew L. Paternostro, Steptoe & Johnson, Charleston, WV, for defendants.

### *OPINION*

FABER, District Judge.

#### I. *Statement of the Case*

The plaintiff, Lucian D. Green, Jr., filed this civil action pursuant to 42 U.S.C. § 1983 seeking damages against the City of Welch, West Virginia, and one of its police officers, L.T. Vaseleros, for an alleged deprivation of his constitutional rights. Essentially, the plaintiff contends that he was arrested without probable cause and falsely imprisoned by Vaseleros, who was acting pursuant to a custom or policy on the part of the City of Welch authorizing its policemen to make warrantless arrests on citizens' complaints. The defendants have moved for summary judgment, contending that the arrest was

based upon probable cause, that Vaseleros is entitled to qualified immunity, and that there is no evidence of any custom or policy on the part of the City of Welch authorizing warrantless arrests on citizens' complaints.

The pertinent facts of record, stated in the light most favorable to the plaintiff, are as follows:

Near the beginning of April 1991, Joanne Kosmos rented an apartment located at 225 McDowell Street, Welch, West Virginia, from Arthur Short. She signed a written lease with Short and paid a month's rent in advance. Half the rent money was provided by the plaintiff, Lucian Green, who was present with Kosmos when she paid Short the rent and signed the lease. Short gave Kosmos a written receipt for the rent. Both the lease and the rent receipt showed Kosmos as the sole tenant. Kosmos told Short she would be occupying the apartment alone. Short was never made aware that Kosmos and Green intended for Green also to live in the apartment.

On April 3, 1991, assisted by Green's mother, Kosmos and Green moved into the apartment on McDowell Street. Green provided some of the furniture, consisting of a bedroom suite, a television set, stereo, and kitchen table and chairs, all of which he moved from his mother's house where he had previously resided. The rest of the apartment's furnishings were supplied by Kosmos.

Green's occupancy of the apartment was short-lived; by the morning of April 4, he was billeted in the Welch City Jail, never to return to 225 McDowell Street. The evening had begun to unravel when Kosmos and Green, their moving completed, stopped on the last trip home and picked up a fifth of vodka. Soon seven or eight friends, who contributed a case or more of beer to the occasion, had stopped by the apartment and a party had begun.

Shortly after midnight, the fifth of vodka exhausted, an argument broke out between Kosmos and Green who had issued competing invitations to two friends to spend the night on the couch. Although no serious injuries were reported, the argument between Kosmos and Green degenerated into violence. Kosmos hurled a "boom box" at Green (the boom box was part of the stereo Green had contributed to the joint venture), scratched and punched at him and kicked him in the legs. Green retaliated by blocking Kosmos's blows and repeatedly pushing her down onto the couch. According to Kosmos, Green also kicked her and stomped her foot. Kosmos then told Green to leave, but Green refused, asserting that it was his apartment too. Kosmos then went for the police, telling Green: "You'd better be gone when I get back."

A distance outside the apartment, Kosmos encountered the defendant L.T. Vaseleros, a Welch police officer, and his partner, Officer Sam Harmon. One of Kosmos's guests had left the apartment with her and had gone on ahead of her to fetch the police. Officers Vaseleros and Harmon were apparently responding to the friend's call when they encountered Kosmos. The record before the court does not reveal what Kosmos's friend said to the police officers; we do know, however, that after talking with the friend the officers set out in the direction of Kosmos's apartment. On the way they met Kosmos herself. Kosmos told the officers that Green had kicked her, stomped her foot, thrown her onto the couch, and was "hollering" at her and she was scared. She also told them the apartment was hers, that she had asked Green to leave and that he had refused. She told the officers she wanted Green out of *her* apartment.[1]

The officers proceeded to the apartment on McDowell Street, knocked on the door and were admitted by Green. By this time the guests had left and Green was alone in the apartment sitting on the couch with empty beer cans in view. The officers stated that Green had beaten Kosmos up and would

---

1. Kosmos testified at her deposition that she had given Officers Harmon and Vaseleros a rent receipt showing the apartment was hers before the officers responded to her plea for assistance. She also testified at her deposition that she used her key and admitted the officers to the apartment. Green, however, contended at his deposition that the rent receipt was not furnished to Officers Vaseleros and Harmon until after Green's arrest and that Green voluntarily admitted the officers to the apartment when they arrived and knocked on the door. For purposes of the present ruling, Green's version on these two points is accepted as true by the court.

have to leave. Green refused, telling them that he had paid half the rent and demanding to see a warrant. When Green persisted in his refusal to vacate the premises, the officers grabbed him, slammed him against the wall, patted him down and placed him under arrest for obstructing an officer. Green spent the night in jail and was subsequently tried on the obstruction charge in state magistrate court. A jury acquitted him after deliberating only three minutes.

## II. *The Standard for Summary Judgment*

■ Summary judgment is appropriate only when, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Miller v. Leathers,* 913 F.2d 1085 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The entry of summary judgment is, upon motion, mandated against a party who fails to make a showing sufficient to establish the existence of an essential element of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Due to the nature of the defense, qualified immunity issues are often appropriate for resolution on motions for summary judgment. Qualified immunity in a civil rights action is an entitlement not to stand trial or face other burdens of litigation. *Mensh v. Dyer,* 956 F.2d 36 (4th Cir.1991). Because the entitlement is an immunity from suit rather than a mere defense to liability, the Supreme Court of the United States has stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534–536, 116 L.Ed.2d 589 (1991). Additionally, the determination as to whether an officer acted with objective reasonableness necessary to entitle him to qualified immunity is a question of law for the court. *Torchinsky v. Siwinski,* 942 F.2d 257 (4th Cir.1991). Accordingly, disposition of qualified immunity questions upon motions for summary judgment would seem appropriate in every case in which the court is able to make the legal determination based upon undisputed facts of record or by viewing disputed facts in the light most favorable to the party resisting the motion. Qualified immunity would become a hollow right unless it is effective to protect law enforcement officers, not only from liability, but also from the rigors and expenses of litigation.

## III. *The Defense of Qualified Immunity*

■ Police officers are entitled to summary judgment on the ground of qualified immunity in civil rights cases if they can establish that reasonable officers could have believed that their actions were lawful in light of both clearly established law and information the officers possessed at the time of the acts in question. *Mensh v. Dyer,* 956 F.2d at 39, *citing Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). Qualified immunity protects law enforcement officers even in cases in which they mistakenly conclude that probable cause to arrest is present; actual probable cause is not necessary for an arrest to be objectively reasonable. *Gorra v. Hanson,* 880 F.2d 95 (8th Cir.1989). The standard for determining probable cause is less stringent in the context of a qualified immunity defense than in the context of a suppression hearing. *Simkunas v. Tardi,* 930 F.2d 1287 (7th Cir.1991). Probable cause for an arrest exists if at the time the arrest is made the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that an offense has been committed. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause requires more than mere suspicion, but it need not be based on evidence to support a conviction, or even a showing that the officer's belief is more likely true than false. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Hughes v. Meyer,* 880 F.2d 967 (7th Cir.1989). The concept of qualified immunity is designed to ensure that law enforcement officers can perform their duties free from the specter of endless and debilitating lawsuits. *Torchinsky v. Siwinski,* 942 F.2d 257

(4th Cir.1991). Any other rule would have an obviously chilling impact upon the ability of law enforcement officers to respond promptly and energetically to the myriad factual situations which confront them while on duty. The public's interest in such a rule is manifest.

■ Applying these standards to the present case, even when all the facts and circumstances are viewed in the light most favorable to the plaintiff, it seems obvious to the court that Officer Vaseleros is entitled to the defense of qualified immunity. While on patrol on the night of April 3–4, 1991, with his partner, Officer Harmon, Officer Vaseleros was summoned by a friend of Joanne Kosmos, who had just left the McDowell Street apartment with Ms. Kosmos for the express purpose of summoning the police. While the record does not tell us what this individual told Officer Vaseleros, we do know that, in response to the friend's entreaties, he immediately set out with his partner toward the McDowell Street apartment in search of Ms. Kosmos and, shortly thereafter, encountered Ms. Kosmos herself on the streets of Welch. Ms. Kosmos told him that the apartment was hers alone and that Green had assaulted her and was refusing to leave the premises even though she had insisted that he do so. She told the officer she wanted Green out of her apartment. There was nothing in any of this to suggest in any way to Officer Vaseleros that Green was a legitimate tenant of the apartment or had any claim to be. When they arrived on the premises, Green was sitting on the couch with empty beer cans around him. When the officers asserted that Green had beaten up Kosmos, all Green told them was that he had paid half the rent and they could not arrest him without a warrant. He did not deny the allegation that he had beaten Kosmos or explain that he considered

the apartment to be his as well as Kosmos's. Green then became somewhat belligerent with the officers, refusing their demands that he leave the apartment.[2] At this point, based upon the information made known to him and the manner in which it was communicated, as well as what he observed at the apartment, it seems totally reasonable for Officer Vaseleros to have assumed that Green had no right to be on the premises.[3]

Numerous cases hold that the defense of qualified immunity is available to law enforcement officers who make decisions which prove to be factually incorrect but are, nevertheless, objectively reasonable based upon the particular facts and circumstances presented. An example, involving a far more serious situation than presented here, is *Slattery v. Rizzo*, 939 F.2d 213 (4th Cir.1991). There, a narcotics officer participating in a sting operation was held entitled to the defense of qualified immunity where he could have believed that an arrestee whom he shot posed a deadly threat, even though such threat was not factually present.

The court, therefore, concludes that the defendant L.T. Vaseleros is entitled to the defense of qualified immunity in this case. Since the defense of qualified immunity applies, it is unnecessary to consider whether or not a violation of the plaintiff's constitutional rights did, in fact, occur.

IV. *The Issue of an Unconstitutional Custom or Policy on the Part of the City of Welch*

■ The plaintiff was permitted to amend his Complaint to assert that the defendant City of Welch had established a custom or policy of authorizing its officers to make warrantless arrests upon citizens' complaints, instead of insisting that citizens swear out war-

---

**2.** Green argues that since Officer Vaseleros arrested him for obstructing an officer, not criminal trespass, no probable cause for criminal trespass was involved in the arrest. However, in determining whether an arrest is supported by probable cause, the crime for which the arrestee is eventually charged is of no consequence. *Jordan v. Commonwealth*, 207 Va. 591, 151 S.E.2d 390 (1966).

**3.** While not essential to the decision, the West Virginia law of landlord and tenant strongly supports the proposition that Kosmos was, in fact,

the sole legitimate tenant of the apartment and had every right to insist that Green leave. The relation between landlord and tenant is created by contract. *Porter v. Woodard*, 134 W.Va. 612, 60 S.E.2d 199 (1950). Here, the landlord Short entered into a contract only with Kosmos. Short was never made aware that he was getting Green as a tenant too. If Green was not a legitimate occupant of the apartment, he became a trespasser when he refused Kosmos's demand to leave and, as such, was subject to arrest by Officer Vaseleros.

rants against the alleged wrongdoers. Plaintiff's original Complaint, while including the City of Welch as a defendant, had failed to allege such a custom or policy and, therefore, was fatally defective under the rule of *Monell v. Dept. of Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Giancola v. State of W. Va. Dept. of Public Safety,* 830 F.2d 547 (4th Cir.1987). The plaintiff has offered no evidence to support this allegation of his Amended Complaint. In response to an interrogatory designed to elicit such evidence, the plaintiff simply responded that the matter was "being developed by my attorney." The plaintiff has not supplemented this response with anything which constitutes evidence of a custom or policy on the part of the city.

At a pretrial conference held in this case on April 26, 1993, when asked how he expected to prove this element of the case, the plaintiff's counsel informed the court that he would subpoena the Mayor of Welch and city arrest records to show such a custom or policy. When challenged to summarize any specific anticipated testimony of the mayor or identify any particular arrest records which would constitute evidence of such a custom or policy, the plaintiff was unable to do so. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court of the United States made clear that a party resisting a motion for summary judgment must come forward with evidence sufficient to establish the existence of an essential element of its case upon which it will bear the burden of proof at trial. The rule of the *Celotex* case has not been met in this case, and summary judgment for the city is appropriate.

### V. *The Question of Excessive Force*

The plaintiff did not set forth in a separate count of his Amended Complaint a claim for excessive force. The Amended Complaint does contain allegations that Green was wearing when arrested a cervical support collar as a result of an injury sustained in an automobile accident and that defendant Vaseleros "handled him extremely rough." The claim for damages in the Amended Complaint asserts that the plaintiff "suffered aggravation of an existing physical injury as a result of unwarranted and unnec-

essary physical abuse at the hands of defendants."

Plaintiff's portion of the pretrial order submitted in this case identifies no evidence, medical or otherwise, to establish any damages based upon a claim of excessive force. Furthermore, at a pretrial conference held in this case on April 26, 1993, plaintiff's counsel candidly admitted that a claim for excessive force was "not the thrust" of plaintiff's case. Accordingly, the court concludes that defendants' use of excessive force is not materially at issue in this case.

An order will be entered consistent with this opinion granting summary judgment to the defendants and dismissing this case on the merits.