**Alexandria**

GLEN LLOYD FOSTER

v.

COMMONWEALTH OF VIRGINIA

No. 1363-86-4

Decided May 17, 1988

COUNSEL

J. Lloyd Snook, III, for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

KEENAN, J.—Glen Lloyd Foster was indicted by a grand jury in January 1986. That indictment contained nine separate counts charging Foster with violations of former Code § 18.2-370[1] (1979) and former Code § 18.2-374.1[2] (1979 and 1983).[3] On July 21, 1986, (first trial), Foster was tried before a jury on counts one,

---

[1] Before the 1986 amendments, Code § 18.2-370 provided: Any person eighteen years of age or over, who, with lascivious intent, shall knowingly and intentionally:

(1) Expose his or her sexual or genital parts to any child under the age of fourteen years to whom such person is not legally married; or

(2) In any manner fondle or feel, or attempt to fondle or feel, the sexual or genital part of any such child, or the breast of any such female child; or

(3) Propose that any such child feel or fondle the sexual or genital parts of such person; or

(4) Propose to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361; or

(5) Entice, allure, persuade, or invite any such child to enter any vehicle, room, house, or other place, for any of the purposes set forth in the preceding subparagraphs of this section; or

(6) Receive money, property, or any other remuneration for allowing, encouraging, or enticing any person under the age of eighteen years to perform in or be a subject of sexually explicit visual material as defined in § 18.2-374.1 or who knowingly encourages such person to perform in or be a subject of sexually explicit material; shall be guilty of a Class 6 felony.

[2] The 1979 version of Code § 18.2-374.1 provided: A. For the purposes of this article and Article 4 (§ 18.2-362 et seq.) of this chapter, the term "sexually explicit visual material" means a picture, photograph, drawing, sculpture, motion picture film or similar visual representation which is obscene for children and which depicts nudity, sexual excitement, sexual conduct, sexual intercourse or sadomasochistic abuse, as defined in § 18.2-390, or a book, magazine or pamphlet which contains such a visual representation. An undeveloped photograph or similar visual material may be sexually explicit material notwithstanding that processing or other acts may be required to make its sexually explicit content apparent.

Sexually explicit visual material is "obscene for children" when the material meets all of the following criteria:

1. Considered as a whole, it appeals to the prurient interest of children as determined by the experience of children in the contemporary community.

2. It affronts contemporary standards of adults as to what is suitable. matter for children.

two, and three. He was convicted and sentenced to five years incarceration on each count. On September. 18, 1986 (second trial), Foster was tried before a jury on counts six through nine. He was found guilty on all four counts and was sentenced to a total of twenty-nine years incarceration. The Commonwealth *nolle prossed* counts four and five.

The issues raised in this appeal are: (1) whether the indictment was void for multifariousness; (2) whether the trial court erred in allowing counts six through nine to be tried together; (3) whether

---

3. Considered as a whole, it lacks serious literary, artistic, political and scientific value for children.

B. A person shall be guilty of a Class 6 felony who:

1. Accosts, entices or solicits a person less than eighteen years of age with intent to induce or force such person to perform in or be a subject of sexually explicit visual material; or

2. Produces or makes or attempts or prepares to produce or make sexually explicit visual material which utilizes or has as a subject a person less than eighteen years of age; or

3. Who knowingly takes part in or participates in the filming, photographing or other reproduction of sexually explicit visual material which utilizes or has as a subject a person less than eighteen years of age; or

4. Sell, distributes or gives away at wholesale or for resale sexually explicit visual material which utilizes or has as a subject a person less than eighteen years of age; or

5. Sell or distributes at retail or not for resale sexually explicit visual material which utilizes or has as a subject a person less than eighteen years of age.

C. A person shall be guilty of a Class 5 felony who knowingly finances or attempts or prepares to finance sexually explicit visual material which utilizes or has as a subject a person less than eighteen years of age.

D. For the purposes of this section a person who is depicted as or presents the appearance of being less than eighteen years of age in sexually explicit visual material is prima facie presumed to be less than eighteen years of age.

E. The provisions of this section shall be severable and, if any of its provisions shall be held unconstitutional by a court of competent jurisdiction, then the decision of such court shall not affect or impair any of the remaining provisions.

[3] The legislature amended Code § 18.2-374.1 in 1983. The amendment subsituted in subsection A the language "which depicts sexual bestiality, a lewd exhibition of nudity, as nudity is defined in § 18.2-390, or sexual excitement, sexual conduct or sadomasochistic abuse" for "which is obscene for children and which depicts nudity, sexual excitement, sexual conduct, sexual intercourse or sadomasochistic abuse." Further, the legislature inserted "also" preceding "defined" in the first sentence, and deleted the second paragraph of subsection A including subdivisions 1,2, and 3, which defined what sexually explicit visual material was considered "obscene for children." In the introductory language of subsection B, "Class 5" was substituted for "Class 6." Subsection B (4) was changed to "Sells, distributes, gives away or possesses with intent to sell, distribute or give away sexually explicit visual material which utilizes or has as a subject a person less than eighteen years of age." Subsection B (5) was deleted.

the 1979 version of Code § 18.2-374.1, under which Foster was tried in counts two and three, is unconstitutional for vagueness or overbreadth; (4) whether the evidence was sufficient to convict Foster on the charges in counts six, seven, eight, and nine; (5) whether the trial court erred at the first trial when it refused to strike for cause jurors who knew that Foster was charged with taking photographs of nude girls; (6) whether the trial court erred at the second trial in not striking for cause jurors who knew some of the details of the allegations involved in the first trial but did not know the outcome of that prior trial.

We find that the trial court did not err in refusing to quash the indictment or in denying Foster's motion to sever counts six through nine for separate trials. We further find that former Code § 18.2-374.1 (1979) is not unconstitutional; that the evidence was insufficient to sustain Foster's convictions in counts six, seven, and nine but was sufficient to sustain his conviction in count eight; and that the trial court did not err in refusing to strike for cause the veniremen in the first and second trial.

I.

The record discloses that prior to trial, Foster made a motion to quash the indictment and a motion to dismiss for failure to state a crime on counts six through nine. He alleged that under Rule 3A:6(b) the charges were not properly joined; that the 1979 version of Code § 18.2-374.1 was unconstitutionally vague and overbroad; and that the facts as specified in the bill of particulars did not constitute crimes as alleged in counts six through nine. The trial court overruled each of these motions.

Foster also made a motion to sever the indictment so that counts not involving the same victim would be tried separately. The trial court denied this motion. On July 18, 1986, the trial court held a hearing on a motion *in limine*. During that hearing, the trial court reconsidered the motion to sever and ruled that counts one, two, and three, counts four and five, and counts six through nine would be severed, requiring three separate trials. On July 21, 1986, counts one, two, and three were tried; counts six through nine were tried on September 18-19, 1986. The Commonwealth elected not to prosecute counts four and five.

## FIRST TRIAL

During jury selection at the first trial, Foster moved to exclude for cause Harriett DeJarnette, Virginia Estes, and Bertha Anderson. DeJarnette indicated that she had read about the case in the newspaper and had heard on the radio that three of the charges were to be tried that day. She also stated that she could not remember the details of the newspaper account. DeJarnette further stated that her exposure to prior information would not affect her impartiality in deciding the case. Foster moved to exclude DeJarnette, arguing that her knowledge would affect her judgment. The trial court overruled Foster's motion.

Virginia Estes indicated during *voir dire* that she had read about the case in the newspapers. She stated that all she remembered was that Foster had taken some pictures of a girl in a coffin. She further stated that she could put that knowledge out of her mind and decide the case based on the evidence presented. Foster moved to exclude Estes for cause, contending that she could not fairly separate this information from the issues to be tried. The trial court overruled this motion.

Bertha Anderson stated during *voir dire* that she had read a newspaper article about the case. She said that the only thing she remembered from the newspaper article was that some pictures were taken of a nude girl in "dead poses." She further stated that at the time she read the article, she had hoped that none of her children were involved. In response to the trial court's questions, Anderson stated that she had not formed any opinion as to Foster's guilt or innocence, could enter the jury box with an open mind, and that the information she possessed would not affect her impartiality. Foster moved to exclude Anderson for cause. He argued that her knowledge of the case, as well as her statement that she hoped none of her children were involved, showed that her judgment would be affected. The trial court overruled this motion.

During the trial, the evidence disclosed that Foster approached R.R., a ten year old boy, and asked for his help with his newspaper route. R.R. testified that he agreed to help Foster and accompanied him to his home. He further testified that Foster sent him downstairs to fold newspapers.

R.R. testified that while he was in the basement, Foster approached him from behind. Foster grabbed R.R. and tied his hands. He then stripped R.R. and ordered him to lie on a table and pretend to be dead. R.R. further testified that Foster showed him pictures of nude girls who appeared to be dead and fondled his penis. R.R. also testified that Foster took pictures of him in various poses while he was undressed.

The jury returned a verdict of guilty on all three counts. It sentenced Foster to five years incarceration on each count.

## SECOND TRIAL

Prior to *voir dire* of the venire panel, the trial court ruled that if any prospective juror knew about Foster's prior convictions, that juror would be excused. During *voir dire*, Foster objected to two potential jurors, Samuel Pattie and Phyllis Rockwell, on the ground that they had knowledge of the prior trial.

Samuel Pattie indicated that he had read about the case in the local newspaper but stated that he could not remember the outcome of the previous trial. He recalled reading that the charges concerned pictures which Foster had allegedly taken and that force or trickery had been used. Pattie further stated, however, that he did not remember any specific information about prior court hearings. In response to questioning by the trial court, Pattie stated that he could set his prior knowledge aside and decide the case based on the law and the evidence presented. Foster moved to excuse Pattie for cause because he had knowledge of the prior trial. The trial court denied the motion based on Pattie's statement that he could put aside his prior knowledge of the case, as well as the fact that there was no indication that Pattie knew of Foster's prior conviction.

Phyllis Rockwell indicated that she had read about the case in the newspapers but did not know the outcome of any prior hearings or trial in the case. She stated that she remembered that the case involved minor children but could not remember any specific information. In response to a question from the trial court, Rockwell stated that she could set aside any prior information and decide the case based on the law and the evidence presented at trial. Foster moved to excuse Rockwell for cause, contending that her prior knowledge might prevent her from fairly trying the issue

of intent. The trial court denied Foster's motion.

At trial, the Commonwealth called W.C. to testify with regard to count nine. W.C. testified that she is the mother of S.C., and that Foster approached her in late July or early September, 1983, to inquire whether S.C. would be available to model for him. She further testified that Foster measured S.C. to determine the size of the clothing she would need. W.C. stated that she did not give Foster an answer at that time but called him about two weeks later and told him that she had decided not to let S.C. model.

S.C. testified that around the end of July, 1983, Foster came to her home and asked her to model for him. He told her the she would be lying in a casket for the purpose of modeling burial clothing. S.C. further testified that Foster told her that her parents could not be present while the pictures were being taken. She testified that during that visit Foster took her to her bedroom, had her lie on the bed, and took her measurements. She further testified that Foster had her close her eyes and had her lie in positions "that the dead people would use."

S.C. testified that she next encountered Foster about two weeks later, after her mother had told him that she would not be modeling for him. S.C. testified that Foster took her to his car and showed her a photograph album. She further testified that he showed her two pictures of girls dressed in "see-through" nightgowns lying in a casket. S.C. testified that Foster told her that this was the type of modeling she would be doing.

The Commonwealth next called B.M. to testify concerning the facts alleged in count seven. B.M. testified that during the first part of September, 1983, Foster approached her and asked her to model clothes for the dead. He told her that this modeling job would take place at his office where she was to pose as if she were dead. B.M. testified that she next saw Foster at her home, at which time he asked her if she had decided whether she would model for him. She told him that she had not yet decided. B.M. further testified that she later told Foster she would not model for him.

During the investigation of these charges, certain documents were obtained which were later identified as having been written by Foster. One document received in evidence indicated that

Foster intended to photograph the "exposed nipples" of a person named "B." At the end of that document was written: "Mrs. M-—s, I can pay you and your daughter _____ $15/hr, and provide you [sic] transportation to my office. You will see to dressing your daughter and arranging her, except for minor adjustments that I may have to make."

The Commonwealth called M.K. to testify with regard to count eight. M.K. testified that while she was waiting for her mother at Foster's place of business in May, 1984, Foster approached her and invited her into his office. She further testified that Foster told her that he had worked his way through college taking pictures of dead children and that he planned to return to this profession. M.K. testified that Foster showed her pictures of nude girls and a picture of a nude boy. M.K. stated that Foster told her he had taken these photographs. She further testified that Foster asked her if she would accompany him when he took pictures of dead children. M.K. testified that Foster told her not to tell anyone about what happened or she would be in trouble. M.K. identified a photograph and a photocopy that Foster showed her. These exhibits showed male and female genitalia photographed at close range. The Commonwealth also introduced into evidence an account written by Foster in which he asked M.K. to model as his corpse.

The Commonwealth next called A.S., the mother of A.L.S., to testify with regard to count six. A.S. testifed that Foster was her next door neighbor. She further testified that on September 8, 1985, she left A.L.S. in Foster's care while she attended a meeting. A.L.S. testified that while Foster was caring for her, he had her read a typewritten introduction to a photograph album. This introduction stated that the album contained nude or seminude photographs. A.L.S. further testified that Foster also showed her pictures of nude girls and told her he had taken these pictures. Foster then showed her how to massage a dead person's arm in order to place it in different positions. A.L.S. testified that after this demonstration, she went swimming. When she finished swimming, Foster told her to lie down and pretend that she had drowned. He then took pictures of her in her bathing suit lying in different poses. A.L.S. testified that Foster did not ask her to pose for pictures on any other occasion.

The jury returned a verdict of guilty on all four counts. Foster was sentenced to eight years each on counts six, eight, and nine.

He was sentenced to five years on count seven.

## II.

Foster first argues that under Rule 3A:6(b),[4] the nine count indictment was improperly joined. He concedes that counts one, two, and three could be joined in a single indictment, as could counts four and five. He argues, however, that the total number of "acts or transactions" alleged in the indictment were not connected or part of a common scheme or plan as required by Rule 3A:6(b). He further argues that the trial court violated Rule 3A:10(b)[5] in trying counts six through nine together. The Commonwealth argues that the offenses charged in the indictment were not misjoined because they constituted part of a common scheme or plan. It also contends that even if some counts were misjoined, counts six through nine were properly tried together, since evidence underlying each of counts six through nine would be admissible at the trial of those other counts if they were tried separately.

We find under Rule 3A:6(b) that counts one through three of the indictment were misjoined with counts six through nine. The evidence clearly shows that the offenses charged in counts one, two, and three were not part of the same act or transaction as the offenses charged in counts six through nine. Further, the evidence does not show that the offenses charged in counts one, two, and three were connected or constituted part of a common scheme or plan with counts six through nine. The offenses charged in counts one, two, and three occurred in June or July, 1980. The offenses charged in counts six through nine occurred from the end of July, 1983, to September, 1985. Thus, during a three-year hiatus, no action was taken to establish a common scheme or plan. Further, we find no evidence which connects Foster's actions toward R.R. with his conduct involving the girls who were the victims in counts

---

[4] Rule 3A:6(b) provides: Two or more offenses, any of which may be a felony or misdemeanor, may be charged in separate counts of an indictment or information if the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan.

[5] Rule 3A:10(b) provides: The court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto.

six through nine. Therefore, we find that the offenses charged in counts one, two, and three were too remote in time and otherwise unconnected to constitute a common scheme or plan with counts six through nine.

■ However, we find that even though counts one, two and three were misjoined with counts six through nine, such misjoinder does not constitute reversible error. Nor was it reversible error to try counts six through nine together. An error, defect, irregularity, or variance in the application or interpretation of a Rule of Court will not constitute reversible error unless the substantive rights of a party have been affected. Rule 3A:2(a). Therefore, in this case, reversible error would not exist if the evidence related to each of the counts would have been admissible in a separate trial of any of the other counts.

■ In *Kirkpatrick v. Commonwealth*, 211 Va. 269, 176 S.E.2d 802 (1970), the Supreme Court placed limitations on the admission of evidence of other offenses. The Court held:

Evidence of other offenses is [admissible] if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused in on trial.

*Id.* at 272, 176 S.E.2d at 805, *cert. denied*, 455 U.S. 1038 (1982). In *Evans v. Commonwealth*, 222 Va. 766, 284 S.E.2d 816 (1981), the Court held that "evidence of other offenses is admissible to show motive or intent or to negate the possibility of accident." *Id.* at 773, 284 S.E.2d at 820. However, such evidence is only admissible if its probative value outweighs its prejudicial nature. *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

■ We find that evidence of Foster's intent in any of counts six through nine would be probative of his intent in any other of those counts. Evidence of other crimes is inadmissible if its only relevancy is to show the disposition of an accused to commit an offense similar to that charged. However, if such evidence proves or tends to prove any other relevant fact of the offense charged, then it will not be excluded merely because it shows that the accused

has committed another crime. *Williams v. Commonwealth*, 203 Va. 837, 841, 127 S.E.2d 423, 426 (1962)(citing *Day v. Commonwealth*, 196 Va. 907, 914, 86 S.E.2d 23, 26 (1955)). In this case, the relevant fact to be proved from Foster's conduct with other victims was his intent. Evidence of his acts with the other victims would be probative of his intent with regard to any given victim. While this evidence does have some prejudicial effect, we find that any prejudicial effect is outweighed by its probative value.

We conclude, therefore, that even though the counts of the indictment were misjoined under Rule 3A:6(b), the misjoinder did not affect Foster's substantive rights. Foster concedes that the court did not err in joining together counts one, two, and three. Further, counts one, two, and three were tried separately from counts six through nine. Since the evidence of Foster's intent in any of counts six through nine would have been admissible at the trial of any of those other counts, we find no error in trying counts six through nine together; thus, Foster's substantive rights were not adversely affected by the scope of the second trial.

### III.

Foster next argues that the 1979 version of Code § 18.2-374.1, under which he was convicted in counts two and three, is unconstitutionally vague and overbroad. The Commonwealth contends that the convictions in counts two and three are valid because the 1979 version of Code § 18.2-374.1 was specifically held to be constitutional in *Freeman v. Commonwealth*, 223 Va. 301, 288 S.E.2d 461 (1982).

Foster argues that the legislature improperly defined "sexually explicit visual material" in former Code § 18.2-374.1 (1979) by partially defining it in relatioin to what is "obscene for children." He contends that such a definition is vague and overbroad, and impermissibly bans the production of material that is suitable for adults but unsuitable for children. He states that in order to be constitutionally valid a statute must list the forbidden acts "with sufficient precision." *New York v. Ferber*, 458 U.S. 747, 765 (1982).

In arriving at its decision in *Ferber*, the Supreme Court noted that while child pornography materials are not protected by the first amendment, legislation dealing with child pornography

must adequately define the prohibited conduct in order to avoid being unconstitutional. The Court held that offenses must be limited "to works that *visually* depict sexual conduct by children below a specified age," and "[t]he category of 'sexual conduct' proscribed must also be suitably limited and described." *Id.* at 764 (emphasis in original). The Court further stated that "criminal responsibility may not be imposed without some element of scienter on the part of the defendant." *Id.* at 765.

In *Ferber*, the Court also noted that a state court is permitted to sever a portion of a statute in order to avoid striking down the entire statute as unconstitutional. *Id.* at 769 n.24. Employing this principle, we find that the phrase "obscene for children," and the definition thereof, are severable from the remainder of the definition of "sexually explicit visual material" set forth in former Code § 18.2-374.1(A) (1979). Upon severance of the phrase "obscene for children," and its definition, from the balance of the statute, we find that the remainder of former Code § 18.2-374.1 (1979) meets all of the requirements of *Ferber*. Specifically, we find that it limits and describes the forbidden acts with sufficient precision as required by *Ferber*. The acts prohibited by that section are depictions of nudity,[6] sexual excitement, sexual conduct, sexual intercourse or sadomasochistic abuse. These acts are similar to the acts proscribed by the New York statute which was upheld in *Ferber*. The conduct prohibited by that New York statute was " 'actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals.' " *Id.* at 765 (quoting N.Y. Penal Law § 263.15 (McKinney 1980)). Both statutes describe specifically prohibited acts. Thus, we find that the 1979 version of Code § 18.2-374.1 meets the requirement of *Ferber* that prohibited conduct be precisely described.

We further find that the scienter requirements of former Code § 18.2-374.1 (B)(1) and (2) (1979) are clearly defined. Former Code § 18.2-374.1 (B)(1) (1979) punishes only those persons who accost, entice, or solicit a child under the age of eighteen with the specific intent to induce such child to perform in or be the subject of sexually explicit visual material. Former Code § 18.2-374.1(B)(2) (1979) punishes only those individuals who produce

---

[6] Nudity was construed by the Supreme Court in *Freeman v. Commonwealth* to mean material depicting the lewd exhibition of the genitals. *Id.* at 311, 288 S.E.2d at 466.

or attempt to produce sexually explicit visual material as defined above, using a child under eighteen as a subject of that material. Thus, we find that the elements set forth in the 1979 version of Code § 18.2-374.1 (B)(1) and (2) meet the scienter requirement of *Ferber*.

In summary, we find that upon severance of the term "obscene for children" and its definition, former Code § 18.2-374.1 (1979) precisely describes and limits the conduct to be prohibited and contains a specific scienter requirement. Therefore, we find that it is not unconstitutional for vagueness or overbreadth.

## IV.

Foster next argues that the evidence was insufficient as a matter of law to prove his criminal intent in counts six through nine. The Commonwealth contends that Foster's statements to the victims, his writings, and his photographs establish his criminal intent.

The conduct alleged in counts six through nine occurred after the 1983 amendment to Code § 18.2-374.1. Foster was charged under former Code § 18.2-374.1(B)(1) (1983), which stated:

B. A person shall be guilty of a Class 5 felony who:
1. Accosts, entices or solicits a person less than eighteen years of age with intent to induce or force such person to perform in or be a subject of sexually explicit visual material.

"Sexually explicit visual material" is defined by former Code § 18.2-374.1 (1983) as "a picture, photograph, drawing, sculpture, motion picture film or similar visual representation which depicts sexual bestiality, a lewd exhibition of nudity, as nudity is defined in § 18.2-390, or sexual excitement, sexual conduct or sadomasochistic abuse. . . ."

On appeal, we must review the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Further, a conviction will be affirmed unless it appears from the evidence that it is plainly wrong or without evidence to support it. *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

■ Foster contends that the evidence failed to prove the element of intent. " 'Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case. The state of mind of an alleged offender may be shown by his acts and conduct.' " *David v. Commonwealth*, 2 Va. App. 1, 3, 340 S.E.2d 576, 577 (1986)(quoting *Ridley v. Commonwealth*, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)). However, when a statutory offense consists of an act combined with an intent, "that intent is just as necessary to be proved as the act itself, and must be found as a matter of fact before a conviction can be had." *McKeon v. Commonwealth*, 211 Va. 24, 26, 175 S.E.2d 282, 284 (1970).

## A. *COUNT EIGHT*

The evidence in count eight revealed that Foster asked M.K. to come into his office and told her that he had worked his way through college taking pictures of dead children. He further told her that he intended to return to this profession. Foster then showed M.K. pictures of nude girls and a picture of a nude boy he had taken. M.K. identified photographs which Foster showed her depicting male and female genitalia photographed at close range. Foster asked M.K. to accompany him one day when he photographed dead children. He also told M.K. not to tell anyone about what happened that day or she would get into trouble. He made a written account in which he asked M.K. to model as his corpse.

Based upon this evidence, we find that the jury could reasonably have inferred that Foster intended to induce M.K. to be the subject of sexually explicit visual material. Foster's intent can be inferred from his actions in showing M.K. the close-up photographs of male and female genitalia; in telling her not to tell anyone what had happened the day he showed her the pictures; in Foster's handwritten account asking M.K. to model as his corpse; and, in asking M.K. to accompany him when he took pictures of dead children. We find that these specific actions support the jury's finding that Foster intended to induce or force M.K. to be the subject of sexually explicit visual material.

## B. *COUNTS SIX, SEVEN, and NINE*

Former Code § 18.2-374.1(B)(1) (1983) establishes an offense where an individual "[a]ccosts, entices or solicits a person less than eighteen years of age with *intent* to *induce* or *force* such person to perform in or be a subject of sexually explicit visual material" (emphasis added). We find that with regard to counts six, seven, and nine, there was insufficient evidence to show that Foster intended to induce or force any of the girls to perform in or be the subjects of sexually explicit visual material. We further find that while the evidence in count eight was sufficient to allow the jury to infer Foster's intent from his actions, it was insufficient to support a finding of intent in counts six, seven, and nine.

In count six, the evidence showed that Foster photographed A.L.S. in a bathing suit and showed her pictures of nude children he had taken. The evidence further showed that Foster had A.L.S. read a typewritten introduction to a photograph album that stated that the album contained nude pictures. Foster also showed A.L.S. how he would massage a dead person's arm in order to place it in different positions. However, he did not ask A.L.S. to model for him on any occasion other than when he photographed her in her bathing suit. The photographs of A.L.S. in her bathing suit are not depictions of sexually explicit visual material as defined by former Code § 18.2-374.1 (1983). Further, there is no indication that Foster planned to take more photographs of A.L.S. Thus, we find that these facts are insufficient to prove an intent by Foster to induce or force A.L.S. to perform in or be the subject of sexually explicit visual material.

In count seven, the evidence showed that Foster asked B.M. to model clothes for the dead. The modeling was to take place at Foster's office. The evidence further showed that an account in Foster's handwriting stated that he intended to photograph a person named "B." That account further stated that he intended to take a photograph depicting a "close-up of front closure open (exposed nipples)" of "B." Even if we assume that "B" is B.M., we find that this evidence does not prove that Foster intended to induce or force B.M. to perform in or be the subject of sexually explicit visual material. Former Code § 18.2-374.1(A) (1983) defines "sexually explicit visual material" in part as the "lewd exhibition of nudity, as nudity is defined in § 18.2-390." Code § 18.2-

390(2) provides:

> "Nudity" means a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered or uncovered male genitals in a discernibly turgid state.

This Court considered the meaning of the terms "lewd, lascivious or indecent" in *Dickerson v. City of Richmond*, 2 Va. App. 473, 346 S.E.2d 333 (1986). In *Dickerson* we stated:

> "These words have meanings that are generally understood. We have defined 'lascivious' to mean 'a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite.' 'Lewd' is a synonym of 'lascivious' and 'indecent.'" Webster's Third New International Dictionary 1301 (1969).

*Id.* at 479, 346 S.E.2d at 336 (quoting *Pedersen v. City of Richmond*, 219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979)).

In applying these definitions to the facts presented here, we find that the photographing of exposed nipples, while within the literal definition of nudity under Code § 18.2-390, is not, without more, the *lewd* exhibition of nudity required under former Code § 18.2-374.1 (1983). Thus, we find that the evidence in count seven showed that Foster intended to photograph B.M. nude, but failed to show that he intended to induce or force B.M. to perform in or be the subject of sexually explicit visual material which contained a lewd exhibition of nudity.

In count nine, the evidence showed that Foster had S.C. lie on her bed and pretend to be dead. He took her measurements and asked her to model burial clothes in a casket. The evidence further showed that Foster showed S.C. photographs of two girls lying in a casket dressed in transparent nightgowns and told her that this was the type of modeling she would be doing. There was no evidence, however, which indicated that Foster intended S.C. to be the subject of photographs depicting a lewd exhibition of nudity. Therefore, we find that the evidence, viewed in the light most

favorable to the Commonwealth, showed that Foster intended to photograph S.C. while she was nude, as defined by Code § 18.2-390(2), but did not show that he intended to induce or force S.C. to perform in or be the subject of sexually explicit visual material as defined in former Code § 18.2-374.1 (1983).

## V.

Foster next argues that the trial court erred in the first trial in refusing to strike for cause three potential jurors who had prior knowledge that he had been charged with taking sexually explicit photographs of children. He also argues that two potential jurors in the second trial should have been struck for cause because they had some knowledge concerning the circumstances of the first trial. The Commonwealth contends that prior knowledge about charges, standing alone, does not disqualify a potential juror.

■ "The partiality or impartiality of an individual juror is a factual issue best determined by the trial court." *Watkins v. Commonwealth*, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), *cert. denied*, 475 U.S. 1099 (1986). Its finding that a juror can be impartial is "entitled to great weight and should be set aside only for plain error." *Id.*

The veniremen in this case had read reports in the newspapers concerning the charges against Foster. In *Briley v. Commonwealth*, 221 Va. 532, 273 S.E.2d 48 (1980), *cert. denied*, 451 U.S. 1031 (1981), the Supreme Court addressed the issue of a potential juror's knowledge obtained from reading accounts of a defendant's criminal activity. In *Briley*, two prospective jurors had heard broadcasts or read accounts of the defendant's criminal activities. The Court held, however, that since the jurors had not formed an opinion concerning Briley's guilt and since they both stated unequivocally that they would determine the case based solely upon the evidence presented in court, their exposure to media coverage did not disqualify them from service on the jury. *Id.* at 538, 273 S.E.2d at 52. The record before us shows that in the first trial, veniremen DeJarnette, Estes, and Anderson all indicated during *voir dire* that they had read in a local newspaper about some of the charges against Foster. DeJarnette only remembered reading about the case and could not remember any details. She stated that she thought Foster was charged with seventeen counts and

that all the counts concerned similar issues. Estes stated that all she could recall was that Foster had taken pictures of a girl in a coffin. Anderson stated that she could only remember that Foster had taken pictures of nude girls in death poses. However, they all stated that their knowledge would not affect their impartiality. The trial court observed these jurors, evaluated their responses, and determined that they could fairly try the issues presented. Based upon our examination of the record, we find that this determination was not plainly wrong.

At the second trial, veniremen Pattie and Rockwell indicated that they had read about the case in the local newspaper but did not know the outcome of the prior trial. Pattie stated that he had read that Foster had used force or trickery in taking some pictures of young people. Rockwell stated that the extent of her knowledge was that Foster had some prior dealings with children. Both Pattie and Rockwell stated that they could set their knowledge aside and decide the case on the evidence presented at trial.

Foster argues that pursuant to *Barker v. Commonwealth*, 230 Va. 370, 337 S.E.2d 729 (1985), the trial court erred in refusing to strike for cause both Pattie and Rockwell. We disagree. In *Barker*, the Court held that if a venireman knows that the defendant has been previously convicted of the same offense for which he is being retried, then that venireman cannot qualify as a juror in the new trial. *Id.* at 375, 337 S.E.2d at 733. In the case before us, veniremen Pattie and Rockwell both stated that they did not have any knowledge of the outcome of the first trial and could decide the issues on the evidence presented before them at trial. Thus, we find that the rule articulated in *Barker* does not apply to the facts presented here. Based upon our review of the record, the trial court was not plainly wrong in finding that Pattie and Rockwell could fairly render a verdict in this case.

## VI.

In summary, we find that the misjoinder of counts one, two, and three of the indictment with counts six through nine does not constitute reversible error, since Foster's substantive rights were not affected; that the trial court did not err in allowing counts six through nine to be tried together because evidence of Foster's intent in each of these counts would have been admissible at the

separate trial of any one count; that the 1979 version of Code § 18.2-374.1 is not unconstitutional; that the evidence was insufficient to sustain Foster's convictions on counts six, seven, and nine but was sufficient to sustain his conviction in count eight; and that the trial court did not err in allowing veniremen DeJarnette, Estes, Anderson, Pattie, and Rockwell to remain on the venire panels. Accordingly, we affirm Foster's convictions in counts one through three and count eight. We reverse his convictions in counts six, seven, and nine and dismiss those counts of the indictment.

*Affirmed in part, reversed in part, and dismissed in part.*

Duff, J., concurred.

Moon, J., concurring in part and dissenting in part.

I concur with the majority except insofar as Count 8 is concerned. I do not believe the evidence was sufficient to prove that Foster accosted, enticed, or solicited M.K. with the intent to induce or force her to be a subject of sexually explicit visual material in violation of then effective Code § 18.2-374.1. While his act of showing a child nude pictures may have been reprehensible, it did not constitute the crime for which he was convicted.

The only contact between Foster and M.K. occurred in the real estate office in which both Foster and M.K.'s mother worked. One afternoon while M.K. waited in the office for her mother to return, Foster engaged her in conversation concerning his wish to return to his old "profession" of photographing dead children. He showed her between 200 to 250 photographs, including the two depicting genitalia at close range. Foster then asked M.K. "if [she] wanted to" accompany him some day after school or on a weekend when he photographed dead children.

A note made by Foster was introduced into evidence. The note is not dated and the evidence suggests no reason to believe from the evidence that the note was made until after the conversation with M.K. From his note it can be inferred that he wished for M.K. to model as a corpse. However, the note further showed that he intended to use "a burial costume for her: sheets, panties, bras, anklets."

Based on an analysis of the note and the conversation between Foster and M.K., even when viewing the facts in the light most favorable to the Commonwealth and granting to the evidence all reasonable inferences fairly deducible therefrom, I am unable to conclude that there was sufficient evidence to prove that Foster enticed M.K. to be the subject of sexually explicit materials. Even if one infers from the conversation that Foster solicited M.K. to be photographed in the admittedly bizarre pose of a dead person, the evidence nevertheless does not sufficiently support the inference that he intended she should strike the pose in a sexually explicit manner.

Only the two photographs depicting genitalia at close range arguably fall within the definition of sexually explicit visual material codified in Code § 18.2-374.1. None of the other 200 to 250 pictures shown by Foster to M.K. constituted sexually explicit material. Most, in fact, showed clothed or partially clothed children. Photographs depicting mere nudity do not constitute sexually explicit material. *Freeman v. Commonwealth*, 223 Va. 301, 311, 288 S.E.2d 461, 466 (1982). Foster never specifically requested M.K. to accompany him to a photographic session and never asked her to pose for him, nude or otherwise. The evidence does not negate the hypothesis that the intent to request her to pose came after the conversation and out of her presence. Most importantly, it does not negate the hypothesis that even if he did in the future request her to pose, he would ask her to pose only in a non-sexually explicit manner, as he had asked most of his other subjects. The evidence does not negate every reasonable hypothesis of innocence of the crime for which Foster was convicted. Accordingly, I would reverse the conviction on Count Eight.