COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Alston and Chafin
Argued at Salem, Virginia

UNPUBLISHED

ETHAN AUBREY BLISS

                                         MEMORANDUM OPINION[*] BY
v.      Record No. 1411-13-3                JUDGE TERESA M. CHAFIN
                                              MAY 13, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Gregory T. Casker for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Ethan Aubrey Bliss ("Bliss") was convicted by the Circuit Court of Pittsylvania County

("circuit court") of one count of possession of child pornography in violation of Code

§ 18.2-374.1:1. On appeal, Bliss challenges the sufficiency of the evidence supporting his

conviction. Bliss argues that the evidence failed to establish that the image on his cell phone was

child pornography and that he knowingly possessed that image. Bliss also argues that the circuit

court erred by finding that he violated the terms of his probation based solely on this child

pornography conviction and by revoking his previously suspended sentences based on that

violation. We hold that the evidence presented was sufficient to support Bliss's conviction and,

therefore, that the circuit court did not abuse its discretion by revoking Bliss's suspended

sentences. Thus, we affirm the circuit court's decision.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence establishes that officers from the Pittsylvania County Sheriff's Department executed a search warrant at the home Bliss shared with his mother and stepfather on the afternoon of October 25, 2012, seeking evidence of child pornography.  Bliss was twenty years old at the time of this search.

The warrant was based on a sexually explicit telephone conversation Bliss had with his girlfriend, B.D., on October 17, 2012, while he was an inmate in the Pittsylvania County Jail.  B.D., born May 16, 1995, was approximately seventeen and a half years old at the time of this conversation.  She had been dating Bliss for about two years.  Bliss asked B.D. if he could take nude pictures of her during the conversation.  Specifically, he asked B.D. for a "new titty picture" and pictures of her "pussy" and "asshole."  A recording of this conversation was played at Bliss's trial and admitted into evidence.

When the officers arrived at Bliss's home, they informed him that they had reason to believe that he had nude images of his girlfriend on his cell phone.  Bliss told the officers that his cell phone was in his bedroom.  Bliss then led the officers through the home to his bedroom, where his cell phone was charging on a bedside table.  When an officer told Bliss that they would need to take the phone with them, Bliss unplugged the phone from its charger and turned it over to the police.  During the search, an officer overheard Bliss tell his stepfather, "It's not like I'm asking her to do something she doesn't want to do."  After the officers seized Bliss's cell phone, he called his father on a different telephone.  Another officer heard Bliss tell his father, "[T]he cops . . . just took my cell phone and I have pictures locked on my in-box."

The police recovered several images of B.D. from Bliss's cell phone.[1]  Five of those images depicted B.D. in various states of undress.  Three of these images, with file dates from October and November of 2011, showed B.D. posing in a bra and panties.  Another image with a file date of October 27, 2011, showed B.D. standing topless in front of a mirror with her breasts exposed.  Another image with a file date of October 24, 2012, showed a close-up picture of B.D.'s genitalia being manipulated by her hand.[2]  A printout of these images was admitted into evidence at Bliss's trial.

Bliss was arrested on child pornography charges and briefly held in the Pittsylvania County Jail while awaiting trial.  Bliss called his mother from the jail on November 7, 2012.  During that call, Bliss told his mother that he had "naked pictures" of his girlfriend on his cell phone.  A recording of this conversation was also played at Bliss's trial and admitted into evidence.

The circuit court held a bench trial on Bliss's child pornography charges on March 28, 2013.  While the circuit court held that the images depicting B.D. in her bra and panties and the image of her topless did not constitute child pornography, it held that the close-up image of B.D.'s genitalia was a pornographic image.  The circuit court also held that the evidence established that Bliss knowingly possessed that image.  Accordingly, the circuit court convicted Bliss of one count of possessing child pornography.  On May 9, 2013, the circuit court held that Bliss had violated the terms of his probation based on this new child pornography conviction and revoked his suspended sentences from unrelated convictions.[3]  Bliss appealed both his child

---

[1] B.D. testified at trial that all of the images in question actually depicted her.

[2] This image was referred to as "Photograph 20" at trial.

[3] Specifically, the circuit court revoked Bliss's suspended sentences resulting from his convictions with the following case numbers:  CR12000158-00, CR12000220-00, and CR12000366-00.

pornography conviction and the circuit court's decisions concerning his probation violation and the revocation of his suspended sentences to this Court.

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 662, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson, 443 U.S. at 319). We do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). When the evidence in the present case is reviewed under this standard in the light most favorable to the Commonwealth, it establishes that the close-up image of B.D.'s genitalia is a lewd exhibition of nudity that qualifies as child pornography. Further, the totality of the evidence establishes that Bliss knowingly possessed this image.

### A. THE CLOSE-UP IMAGE OF B.D.'S GENITALIA IS CHILD PORNOGRAPHY

On appeal, Bliss argues that the image of B.D.'s genitalia found on his cell phone is not a lewd display of nudity and, therefore, that it does not constitute child pornography. Code § 18.2-374.1(A) defines "child pornography" as "sexually explicit visual material which utilizes or has as a subject an identifiable minor." That same section defines "sexually explicit visual

material" to include "a picture, photograph . . . [or] digital image . . . which depicts . . . a lewd exhibition of nudity, as nudity is defined in § 18.2-390 . . . ." Code § 18.2-390 defines "nudity" as "a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a full opaque covering . . . ."

"It is well established that 'nudity alone is not enough to make material legally obscene.'" Asa v. Commonwealth, 17 Va. App. 714, 718, 441 S.E.2d 26, 29 (1994) (quoting Jenkins v. Georgia, 418 U.S. 153, 161 (1974)). Nude images are only "sexually explicit visual material" as that term is defined by Code § 18.2-374.1 if they are "lewd." Id. "'Lewd' is a synonym of 'lascivious' and 'indecent.' This Court has . . . defined 'lascivious' to mean 'a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite.'" Id. (quoting Dickerson v. City of Richmond, 2 Va. App. 473, 479, 346 S.E.2d 333, 336 (1986)).

This Court has addressed whether images depicted lewd exhibitions of nudity in Foster v. Commonwealth, 6 Va. App. 313, 369 S.E.2d 688 (1988), Frantz v. Commonwealth, 9 Va. App. 348, 388 S.E.2d 273 (1990), and Asa, 17 Va. App. 714, 441 S.E.2d 26. In Foster, the appellant both attempted to take and actually took several photographs of underage children in various states of undress. Foster, 6 Va. App. at 320-21, 369 S.E.2d at 692-93. Although this Court found that some of the photographs that the appellant intended to take would have constituted sexually explicit visual material, see id. at 327, 369 S.E.2d at 696-97, it held that "the photographing of exposed nipples, while within the literal definition of nudity under Code § 18.2-390, is not, without more, the *lewd* exhibition of nudity required under [Code § 18.2-374.1]." Id. at 329, 369 S.E.2d at 698.

In Frantz, the appellant took photographs of nude underage boys "just standing there." Frantz, 9 Va. App. at 350-52, 388 S.E.2d at 274-75. While no photographs taken by the

appellant were offered at trial, "[t]here was no testimony from the victims that they were sexually aroused or that they took part in any type of sexual conduct while being photographed by [the appellant]." Id. at 352-53, 388 S.E.2d at 276. This Court held that the nude photographs did not constitute lewd displays of nudity. Id. at 353, 388 S.E.2d at 276.

In Asa, the appellant took a series of photographs of an underage girl in various poses and states of undress. Asa, 17 Va. App. at 716, 441 S.E.2d at 27-28. Several of the photographs depicted the victim simply standing nude with her hands by her sides. Id. at 718, 441 S.E.2d at 29. This Court noted that the victim's "breasts, buttocks, and genitals" were not "the central focus of the photographs," and held that these photographs "did not meet the statutory requirements of 'sexually explicit visual material.'" Id. Some of the photographs, however, depicted the victim "posing in a sexually provocative manner, with the camera's eye focused on her genitalia." Id. These photographs showed the victim sitting with her knees drawn up to her breasts with "her legs widely spread to expose a frontal view of her genitalia." Id. This Court held that these photographs were sexually explicit within the meaning of Code § 18.2-374.1, and placed emphasis on the fact that the victim's genitalia was the primary focus of the close-up photographs. Id.

The image on which Bliss's child pornography conviction is based depicts nudity rather than other sexual conduct. This image, however, is more comparable to the images this Court held were sexually explicit in Asa than the images this Court held were not sexually explicit in Foster and Frantz. Like the sexually explicit images in Asa, the image on which Bliss's child pornography conviction is based shows a close-up picture of female genitalia. Moreover, as B.D.'s genitalia and her hand manipulating it are the only objects visible in the image, B.D's genitalia is the sole focus of the image. The rest of her body and her face are not depicted. Unlike the images in Foster and Frantz, the image in question in this case does not depict a nude

individual simply "standing there."[4] The image depicts B.D.'s genitalia being manipulated by her hand to more fully expose her vagina to the camera. Under these circumstances, the circuit court did not err in finding that this image constituted a lewd exhibition of nudity and, in turn, sexually explicit visual material under Code § 18.2-374.1. This Court's decision in Asa and the evidence presented by the Commonwealth supported the circuit court's decision that this image constituted child pornography.

### B. BLISS KNOWINGLY POSSESSED THE PORNOGRAPHIC IMAGE

"In order to convict a person of possession of child pornography, the Commonwealth must prove beyond a reasonable doubt that the individual '*knowingly possessed* sexually explicit visual material utilizing or having as a subject a person less than 18 years.'" Kromer v. Commonwealth, 45 Va. App. 812, 817, 613 S.E.2d 871, 873 (2005) (emphasis added) (quoting Code § 18.2-374.1:1). Bliss argues that the evidence presented at his trial was insufficient to prove that he knowingly possessed the pornographic image of B.D. The circuit court's conclusion that Bliss knowingly possessed the image in question, however, is supported by the totality of the circumstances of the case.

Circumstantial evidence may be more compelling and persuasive than direct evidence, and it is entitled to as much weight as direct evidence when convincing. See Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008). "Circumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)

---

[4] We also note that this case is further distinguished from Frantz by the fact that the photographs at issue were not admitted into evidence in that case. In the present case, the circuit court actually viewed the image of B.D.'s genitalia when determining whether that image constituted a lewd exhibition of nudity.

(internal quotation marks omitted)). "[D]irect proof of a fact is not essential if circumstantial evidence proves the same fact and at the same time excludes every reasonable hypothesis to the contrary." Veney v. Commonwealth, 212 Va. 805, 806, 188 S.E.2d 80, 81 (1972).

This Court addressed whether an appellant knowingly possessed electronic images of child pornography in Kromer, 45 Va. App. 812, 613 S.E.2d 871. In Kromer, this Court noted that while cases involving the possession of electronic images "appear to be . . . consigned to the new and evolving area of computer technology, we examine [these cases] under familiar principles of constructive possession of contraband." Id. at 818, 613 S.E.2d at 874.

> In order to convict a person of illegal possession of contraband, "proof of actual possession is not required; proof of constructive possession will suffice." Maye v. Commonwealth, 44 Va. App. 463, 483, 605 S.E.2d 353, 363 (2004). To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the [contraband] and that it was subject to his dominion and control." Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citation omitted). Ownership or occupancy of the premises on which the contraband was found is a circumstance probative of possession. Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997).

Id. at 819, 613 S.E.2d at 874. In the specific context of digital images, "we determine whether [the] appellant knew the images existed and, if so, [whether] he exercise[d] dominion and control over them after they were downloaded[.]" Id. at 818, 613 S.E.2d at 874.

On appeal, Bliss does not argue that the cell phone and the images it contained were not subject to his dominion and control. He admitted that he owned the cell phone and the police recovered it from his bedroom. Rather, Bliss argues that he was not aware that the particular pornographic image of B.D. was on the cell phone. Bliss argues that the Commonwealth's evidence failed to establish that he ever opened the file of the image on his cell phone or that he otherwise viewed the image. Although he acknowledges that he made statements referencing

-8-

nude images of B.D. on his cell phone, Bliss argues that the evidence failed to establish that he was referencing the specific pornographic image of B.D.'s genitalia rather than the other images of B.D. in various states of undress that were also found on the cell phone. Bliss also notes that the file dates of the other images of B.D. on the cell phone indicated that they had been on the phone for roughly a year, but the file date of the pornographic image indicated that it had been on the phone for less than twenty-four hours at the time the phone was seized.

As the Commonwealth prevailed below, we must "accord [to it] the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). First, we note that Bliss's ownership of the cell phone, while not dispositive, is a circumstance tending to prove that he knowingly possessed the contraband found on it. See Archer, 26 Va. App. at 12, 492 S.E.2d at 832. The circuit court could reasonably infer that Bliss was likely aware of the images and other content contained on the cell phone that he owned, possessed, and regularly used.

Additionally, Bliss referenced nude images of B.D. in four different conversations around the time that the police seized the phone. In the first of these conversations, Bliss asked B.D. if he could take nude pictures of her. He specifically asked her for "new" pictures, and asked for a picture of her genitalia. This conversation occurred on October 17, 2012. According to its file date, the pornographic image of B.D's genitalia was received by Bliss's cell phone the next week on October 24, 2012.

The second and third conversations in which Bliss referenced nude images of B.D. on his cell phone occurred when the police were executing the search warrant at his home. After the police told Bliss that they had reason to believe he had nude images of his girlfriend on his cell phone, Bliss attempted to justify the presence of the images to his stepfather by explaining to him that he had not asked B.D. "to do something she doesn't want to do." After the police seized

-9-

the cell phone, Bliss called his father on a different telephone and told him that he had "pictures locked on [his] in-box."

While Bliss's statements to his father and stepfather could be construed as only referencing the nonpornographic images of B.D. on his cell phone, Bliss referenced nude images of B.D. in yet another conversation. The fourth conversation in which Bliss referenced the images occurred when he called his mother from jail on November 7, 2012, roughly two weeks after the officers seized the cell phone. In this conversation, Bliss told his mother that he had "naked pictures" of his girlfriend on his cell phone. By referencing "naked pictures" in the plural form, Bliss implied that he was aware that his cell phone contained at least two nude images of B.D. Although the cell phone contained multiple images of B.D., only two of those images actually depicted her nude: the topless image of B.D. and the image of B.D.'s genitalia. Thus, this statement implied that Bliss was aware that the pornographic image of B.D.'s genitalia was on his cell phone.

When considering the totality of the circumstances of this case, the circuit court could reasonably infer that Bliss knowingly possessed the image of B.D.'s genitalia. The evidence established that Bliss requested a similar image one week before the image in question arrived on his phone. Thus, the circuit court could infer that Bliss anticipated receiving this image and that he viewed it upon its arrival. Further, Bliss referenced nude images of B.D. on his cell phone in conversations with his mother, father, and stepfather. He also implied that his phone contained more than one nude image of B.D. in his conversation with his mother. These conversations provide additional support to the inference that Bliss was aware that the image of B.D.'s genitalia was on his cell phone. Accordingly, the evidence presented in this case supports the circuit court's conclusion that Bliss knowingly possessed child pornography.

## C.  THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION BY REVOKING BLISS'S SUSPENDED SENTENCES BASED ON HIS NEW CHILD PORNOGRAPHY CONVICTION

Bliss also contends that the circuit court abused its discretion by finding that he violated his probation and revoking his suspended sentences based on that violation.  Bliss argues that the circuit court should not have revoked his suspended sentences based on his probation violation when that violation resulted solely from his new child pornography conviction that he had appealed.  As we have concluded that the evidence presented was sufficient to support Bliss's child pornography conviction, however, this argument is without merit.  See Patterson v. Commonwealth, 12 Va. App. 1046, 1049, 407 S.E.2d 43, 45 (1991) ("The appeal of the underlying conviction will determine the outcome of the appeal of the revocation proceeding. . . . Where the criminal conviction underlying the revocation is affirmed on appeal, the appeal is considered without merit; or is considered moot." (citations omitted)).

Nevertheless, we review "a trial court's decision regarding suspension and probation under an abuse of discretion standard."  Dunham v. Commonwealth, 59 Va. App. 634, 638, 721 S.E.2d 824, 826 (2012) (citation omitted).  When a defendant fails to comply with the conditions of a suspended sentence, the trial court has the power to revoke the sentence in whole or in part "for any cause the court deems sufficient."  Code § 19.2-306.  "[E]vidence that 'the trier of fact in a criminal proceeding found beyond a reasonable doubt that [a] defendant violated a state law is sufficient . . . to support' revocation of a suspended sentence, notwithstanding the pendency of such conviction on appeal."  Resio v. Commonwealth, 29 Va. App. 616, 622, 513 S.E.2d 892, 895 (1999) (quoting Patterson, 12 Va. App. at 1049, 407 S.E.2d at 45).  Thus, the circuit court did not abuse its discretion by finding that Bliss had violated his probation and revoking his suspended sentences based on his new child pornography conviction despite the fact that Bliss had appealed that conviction to this Court.

### III.  CONCLUSION

We hold that the evidence presented by the Commonwealth was sufficient to support Bliss's child pornography conviction.  The close-up image focused on B.D.'s genitalia constituted a lewd exhibition of nudity as defined by Code § 18.2-374.1, and in turn constituted sexually explicit visual material depicting child pornography.  The circumstances of the case, including Bliss's ownership of the cell phone on which the image was found and his statements concerning that image to B.D. and his parents, establish that Bliss knowingly possessed the pornographic image.  Accordingly, the circuit court did not err in convicting Bliss of one count of the possession of child pornography.  Furthermore, the circuit court did not err in finding that Bliss violated the terms of his probation and revoking his unrelated suspended sentences based on this new conviction.  For these reasons, we affirm the circuit court's decision.

<u>Affirmed.</u>